UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYREON BUFORD,

     Petitioner,

                             CASE NO. 06-CV-13085

v.                            HONORABLE PATRICK J. DUGGAN

MILLICENT WARREN,

     Respondent.

_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS

          At a session of said Court, held in the U.S.
          District Courthouse, Eastern District
          of Michigan on December 19, 2007.

     Present:       THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

Petitioner Myreon Buford ("Petitioner"), who is presently confined at the Kinross

Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.[1] In his *pro se* application, Petitioner challenges his

conviction for three counts of first-degree felony murder in violation of MICH. COMP.

LAWS ANN. § 750.316(1)(b), and two counts of assault with intent to murder in violation

of MICH. COMP. LAWS ANN. § 750.83. For the reasons stated below, the Court denies

_____

     [1]When Petitioner filed his petition, he was incarcerated at the Thumb Correctional
Facility where Millicent Warren is the warden. Usually the Court will order the case
caption amended to reflect the name of the warden where the petitioner currently is
located. *See* Rule 2 of the Rules Governing Section 2254 Cases. As the Court is denying
the petition in this Opinion and Order, however, it will not do so in this case.

the petition for a writ of habeas corpus.

## I.      Factual and Procedural Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. The jury also convicted Petitioner of arson of a dwelling house, but the trial court vacated this conviction at sentencing. Petitioner's convictions arose from a fire at an apartment building in Detroit, Michigan on January 10, 2002, which killed Sharon Jones, Jameise Scaife, and Ms. Scaife's unborn baby.

Petitioner had been romantically involved with Ms. Scaife during the four years before the date of the fire. They had a one and a half year-old daughter together and Ms. Scaife was pregnant with the baby who died in the fire. Ms. Scaife also had a six year-old daughter. By the time of the fire, Petitioner's and Ms. Scaife's relationship had ended.

The day before the fire, Petitioner went to Ms. Scaife's apartment, which was on the fourth floor of the apartment building. Petitioner knocked on Ms. Scaife's apartment door. Ms. Scaife's brother went to the door and asked who was there. Petitioner replied "me." Ms. Scaife told her brother not to answer the door and then argued with Petitioner through the closed door. Ms. Scaife refused to let Petitioner inside the apartment.

Evidence was presented that the fire at the building was intentionally set. A fire investigator testified that a flammable liquid had been poured in the stairwell and that the fire had burned upward to the fourth floor, causing the most damage on that floor. The investigator smelled gas on the first and second floor, but no gas was detected on the third and fourth floor. The investigator explained that the fire on those floors likely was

consumed by the fire and washed away by a broken water pipe. The investigator opined that the fire spread throughout the fourth floor like a "freight train" because the door from the stairwell had been left open, whereas the doors leading to the other floors remained closed. The investigator explained that it was "more than likely" that someone had poured gasoline from the fourth floor down the stairs and lit the fire between the first and second floors. The investigator testified that a cigarette could have started the fire only if it had an open flame.

Petitioner was arrested on January 11, 2002, the day following the fire, at the home of his employer, Raymond Holiday, on Manor Street in Detroit, Michigan. Petitioner made a statement to Detroit Police Department Investigator Barbara Smith on the following date, in which he admitted to deliberately starting the fire because he was angry with Ms. Scaife for refusing to let him inside her apartment. Petitioner admitted pouring gasoline on the stairs leading to the fourth floor of Ms. Scaife's building. He told Investigator Simon that he poured the rest of the gasoline down the steps and in the hallway. Petitioner stated that he tossed a lit cigarette into the gasoline as he left the building. Petitioner then drove to Mr. Holiday's house, where he told Investigator Smith that he placed the gasoline can under the front porch. Some time after Petitioner made this statement, officers from the Detroit Police Department went to Mr. Holiday's house and recovered a gasoline can containing some gasoline from under the front porch.

Mr. Holiday testified on Petitioner's behalf. Mr. Holiday testified that Petitioner stayed at his home on Manor Street on January 9 and 10. He further testified that he and

Petitioner worked until five or six o'clock on the 9th, returned to the house, relaxed, and drank until 11:30 or 12:00.  Mr. Holiday then went to his bedroom to go to sleep, leaving Petitioner in the living room watching television.  According to Mr. Holiday, when he woke up the next morning at 8:00, Petitioner was at his house.  Mr. Holiday acknowledged, however, that he did not know where Petitioner was between the time that he went to bed and the time he awoke.  On rebuttal, Detroit Police Department Investigator James Fisher testified that when he went to Mr. Holiday's home on the day after the fire, Mr. Holiday indicated that Petitioner was getting ready to leave the house when he went to bed.

On October 2, 2002, the jury returned a verdict finding Petitioner guilty of three counts of felony murder, two counts of assault with intent to commit murder, and one count of arson of a dwelling.  On October 16, 2002, the trial court dismissed the arson conviction and sentenced Petitioner to life in prison on each of the three felony murder convictions and forty to sixty years' imprisonment on each of the assault with intent to murder convictions.  Petitioner thereafter filed a direct appeal.

The Michigan Court of Appeals affirmed Petitioner's conviction on September 16, 2004.  *People v. Buford*, No. 246331 (Mich. Ct. App. Sept. 16, 2004).  The Michigan Supreme Court denied Petitioner leave to appeal on May 31, 2005.  *People v. Buford*, 472 Mich. 915, 696 N.W. 2d 713 (2005).  On July 6, 2006, Petitioner filed the pending application for a writ of corpus, raising the following grounds:

      I.  Whether or not petitioner's confession was involuntary and

the trial court erred in ruling it admissible without properly evaluating the testimony; use of this involuntary statement against him denied petitioner due process of law. U.S. Const Ams V, XIV; Mich Const 1963, Art 1 § 17.

II.  Whether there was insufficient evidence admitted of assault with intent to murder and petitioner's convictions are a violation of due process. U.S. Const Am XIV; Mich Const 1963, Art 1 § 17.

III.  Whether petitioner was denied a fair trial and his right to a properly instructed jury by the incomplete and erroneous instructions on felony murder, arson, and alibi; the improper verdict form denied petitioner his right to the presumption of innocence and unfairly emphasized the prosecution's theory.U.S. Const. Ams VI, XIV; Mich. Const. 1963, Art 1 §§ 17, 20.

IV.  Whether petitioner was denied a fair trial, his right to effective assistance of counsel, and his right to present a defense when the trial court erroneously ruled that a statement by a tenant in the apartment building that he or she saw three men running away was inadmissible hearsay, and where counsel did not produce or demand, on the record, the production of the witness who made the observation. U.S. Const. Ams VI, XIV; Mich. Const. 1963, Art 1 §§ 17, 20.

V.  Whether petitioner must be resentenced because he was sentenced for assault with intent to murder based on inaccurate information. U.S. Const. Am XIV; Mich. Const. 1963, Art 1 § 17.

VI.  Whether the trial court committed reversible error in erroneously instructing the jury on the concept of reasonable doubt and erroneously instructed the jury that they would have a "duty" to convict petitioner in certain situations, thereby denying petitioner the right to due process pursuant to U.S. Const Ams V, XIV; Mich Const 1963, Art 1 § 17.

VII.  Whether the trial court committed reversible error in its instructions to the jury regarding the intent element for felony

murder, thereby denying petitioner the right to due process
pursuant to U.S. Const Ams V, VI,  Mich Const 1963, Art 1
§§ 14, 17, 20.

## II.    Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims on the

merits:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under Section 2254(d), Petitioner must show that the

state court's decision "was either contrary to, or an unreasonable application of, [the

Supreme] Court's clearly established precedents, or was based upon an unreasonable

determination of the facts."  *Price v. Vincent*, 538 U.S. 634, 639, 123 S.Ct. 1848, 1852-53

(2003).  The federal habeas court must presume the correctness of the state court's factual

determinations.  28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167,

169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are

clearly erroneous.")

A state court's decision is "contrary to" clearly established federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

6

question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

## III.   Analysis

### A.   Whether the State Court Erred in Finding Petitioner's Confession Voluntary and Admitting his Statement at Trial

In determining whether a confession is voluntary, the ultimate question for a court is "'whether a defendant's will was overborne by the circumstances surrounding the giving of a confession.'" *Dickerson v. United States*, 530 U.S. 428, 434, 120 S. Ct. 2326, 2331 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct 2041 (1973)). The following circumstances relating to the characteristics of the accused and the details of the interrogation are relevant to this determination: (1) whether there was police coercion; (2) the length of the interrogation; (3) the location of the interrogation; (4) the continuity of the interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and, (8) whether the suspect was advised of his or her *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94, 113 S. Ct. 1745, 1754 (1993) (internal citations omitted).

On May 2, 2002, the state trial court conducted a *Walker* [2] hearing to determine whether Petitioner's statement was voluntary and therefore admissible at trial. At the hearing, Detroit Police Department Investigators Barbara Simon and James Fisher testified that Petitioner did not appear to be under the influence of alcohol or drugs and was cooperative when he was arrested and when he gave his statement on January 11, 2002. Investigator Simon further testified that, before she interviewed Petitioner, she advised him of his *Miranda* rights and he signed the written waiver of rights form. Petitioner told Investigator Simon that he was thirty years old, had completed the eleventh grade, and had no problems reading and understanding the waiver of rights form. Petitioner did not complain of any medical problems. According to Investigator Simon, Petitioner never denied his involvement in the fire. Investigator Smith and Investigator Fisher testified that Investigator Fisher did not participate in the actual interrogation of Petitioner. The investigators denied that Investigator Fisher ever pulled his gun on Petitioner, pulled Petitioner's arm behind his back or otherwise used physical force on Petitioner, or demanded that he make a statement.

Petitioner testified at the *Walker* hearing that after his arrest, he told the officers that he did not know anything about the fire and that he was asleep at Mr. Holiday's

---

[2]In *People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965), the Michigan Supreme Court held that, if the defendant contends that his or her confession was involuntary, the trial court must conduct a hearing in order to determine whether the defendant made an intelligent and voluntary waiver of his Fifth and Sixth Amendment rights.

house when the fire occurred.  Petitioner testified, however, that Investigator Fisher then said that he was tired of "fucking around with" Petitioner and told Petitioner: "You're going to give us a statement."  Petitioner claimed that when he again denied knowing anything about the fire, Investigator Fisher slammed his hand on the desk and said: "It's bullshit" and "I'll be back."

Petitioner testified that Investigator Simon came into the room twenty minutes later and moved him to another room.  Petitioner testified that Investigator Simon then told him that he needed to tell her what happened or "ATF is going to take up the case, and they're going to try to get the death penalty."  Petitioner testified that he told Investigator Simon that he did not know anything about the fire.  According to Petitioner, Investigator Simon advised him of his rights at this point.  Petitioner claimed that he then wrote a statement saying that he was at home asleep and did not know about the fire. According to Petitioner, Investigator Simon then left the room, but returned five minutes later with Investigator Fisher.  Petitioner testified that Investigator Fisher said "this is bullshit" and demanded that Petitioner tell them what happened.  Petitioner claimed that when he again told the officers that he knew nothing about the fire, Investigator Simon told him that he was going to give a statement.

Petitioner testified that Investigator Simon then questioned him over the next two and a half to three hours.  Petitioner indicated that he answered most of Investigator Simon's questions.  Investigator Simon then wrote out a statement and told Petitioner to read and sign it.  Petitioner testified that he stood up and refused to sign the statement.

According to Petitioner, Investigator Fisher then twisted his arm behind his back and slammed his head on the desk. Petitioner claimed that he was crying and refused to sign the statement. Petitioner testified that Investigator Fisher kept twisting his arm and pulled out his gun. According to Petitioner, Investigator Fisher put the gun to the back of Petitioner's head and said that he could shoot Petitioner and make it look like Petitioner went for his gun. Petitioner claimed that because he feared for his life, he then signed the statement and initialed the corrections on the statement that Investigator Simon made.

When Petitioner's counsel was done questioning Petitioner at the *Walker* hearing, the trial court indicated to the prosecutor that he did not need to hear any cross-examination, stating that he had "heard enough." When Petitioner's counsel indicated that he had no further evidence in support of Petitioner's motion to suppress the statement, the trial court denied the motion, ruling that the statement was voluntary. In reaching this decision, the trial court stated that it found Petitioner's description of the interrogation unbelievable:

> I think the one thing he left out was when they put his feet on the hot charcoal and made him stand on it, and put the electroids (sic) on his testicles. He left all of that out.
>
> And after he gave his name, told me what his name was, I didn't believe a word he said after that.
>
> That this gentleman was advised of his rights. He waived his rights. He was not threatened.
>
> I can understand why he wants to take the statement back now, but it's too late. He gave a statement; it was voluntary after being advised of his rights. The statement is admissible,

so the Motion to Quash is denied.

(5/2/02 Tr. at 50.)

In reviewing a federal habeas petition, a district court must presume the correctness of the state court's factual determinations. 28 U.S.C. § 2254(e)(1). The habeas petitioner has the burden of rebutting this presumption with clear and convincing evidence. *Id*. Therefore, the state court's analysis of subsidiary factual questions in determining the voluntariness of a statement, such as the length and circumstances of the interrogation and assessments of credibility, are entitled to the presumption of correctness accorded to state court findings of fact. *Miller v. Fenton*, 474 U.S. 104, 116-17, 106 S. Ct. 445, 453 (1995). Whether the circumstances found by the trial court warrant a finding that the suspect's statement was voluntary is a legal inquiry requiring plenary federal review. *Id*. at 115, 106 S. Ct. at 452.

In this case, the state trial court's finding that Investigators Fisher and Simon used no coercion or threats to induce an incriminating statement from Petitioner is entitled to the presumption of correctness. So too is the trial court's finding that Petitioner's testimony was wholly incredible. To rebut this presumption, Petitioner contends that Investigator Fisher's testimony at the *Walker* hearing was impeached because Investigator Fisher testified that he was never in the interrogation room, whereas Investigator Smith testified that Investigator Fisher entered the room to give Petitioner a cigarette and/or a soda. Petitioner also contends that the investigators fabricated his statement. In support of this contention, Petitioners points out that the arson investigator testified that a

11

cigarette could not start a fire, but in his "confession" he allegedly admits to igniting the gasoline by throwing down his cigarette.

Petitioner fails to present clear and convincing evidence to demonstrate that the trial court's factual determinations were incorrect. Based on those factual findings, this Court holds that the state court did not err in finding Petitioner's statement voluntary and in holding that his constitutional rights were not violated by the admission of his confession. Petitioner therefore is not entitled to habeas relief on his first claim.

### B. Whether There was Sufficient Evidence to Support Petitioner's Convictions for Assault with Intent to Murder

Petitioner contends that there was insufficient evidence presented to show that he intended to kill Ms. Scaife's two children– the victims of the charged assaults– and that therefore there was insufficient evidence to sustain his convictions for assault with intent to murder.

The Michigan Court of Appeals rejected this claim, finding that "[u]nder the doctrine of transferred intent, the prosecutor had to show that Defendant had the requisite state of mind to kill, not that his state of mind was directed at the victims of the charged assaults." *Buford*, Slip Op. at *3. The state appellate court found sufficient evidence from which a rational trier of fact could find beyond a reasonable doubt that Petitioner had the requisite intent to kill his ex-girlfriend, Ms. Scaife. Under the transferred intent doctrine, this evidence was sufficient to support Petitioner's convictions of assault with intent to murder Ms. Scaife's two children.

A habeas court reviews a claim that the evidence at trial was insufficient for a conviction by asking whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). This standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S. Ct. at 2792, n. 16. When applying this standard, a habeas court does not reweigh the evidence or redetermine the credibility of the witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003). "It is the province of the fact-finder to weight the probative value of the evidence and resolve any conflicts in testimony." *Id*. Therefore, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id*. at 788-89 (citations omitted).

Under Michigan law, the elements of assault with intent to murder are: (1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder. *Warren v. Smith,* 161 F. 3d 358, 361 (6th Cir. 1998) (citing *People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753, 759 (Mich. Ct. App. 1998)). A conviction for assault with intent to murder must be premised upon a defendant's specific intent to kill. *Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001) (citing *People v. Edwards*, 171 Mich. App. 613, 620, 431 N.W. 2d 83 (1988)). In other words, it is not sufficient that the defendant merely intended to inflict great bodily harm or wantonly and wilfully disregarded the likelihood of death or great bodily harm as a result of his or her

acts.  *Id*.  "The intent to kill 'may be proven by inference from the facts in evidence.'"  *Id*. (citing *People v. Hoffman*, 570 N.W.2d 146, 150, 225 Mich. App. 103 (1997)).  In determining the defendant's intent, the trier of fact may take into account "the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made."  *People v. Taylor*, 422 Mich. 554, 568, 375 N.W. 2d 1, 8 (1985).  Under the doctrine of transferred intent, a "general intent to kill need not be directed at an identified individual or the eventual victim."  *People v. Abraham*, 256 Mich. App 265, 270, 662 N.W. 2d 836 (2003); *see also People v. Plummer*, 229 Mich. App. 293, 305, 581 N.W.2d 753, 759 (1998).

In the present case, it was unnecessary for the prosecution to show that Petitioner intended to kill the victims injured in the fire to sustain his convictions for assault with intent to murder.  As the Michigan Court of Appeals indicated in its opinion, the prosecution only needed to prove beyond a reasonable doubt that Petitioner intended to kill someone.  The evidence was sufficient for a rational trier of fact to conclude that Petitioner intended to kill Ms. Scaife.

In his statement that was read to the jury, Petitioner indicated that he went to Ms. Scaife's apartment in order to return their daughter's coat and boots, and that he left "mad" after Ms. Scaife refused to open the door.  (10/1/02 Trial Tr. at 15.)  Petitioner

further indicated that when he subsequently called Ms. Scaife on her cell phone but there were no minutes on it, he "was really mad now." (*Id*.) Late that evening, after drinking at Mr. Holiday's house, Petitioner returned to Ms. Scaife's apartment to see if she would talk to him. (*Id*.) He went to the apartment but claims he left without knocking. (*Id*.) He then returned to his car and tried to start it, but the car would not start because it was out of gasoline. (*Id*. at 16.) Petitioner then walked to the corner and purchased some gasoline. As he was returning to his car, he saw a light on inside Ms. Scaife's apartment and so he went back upstairs. (*Id*.) Petitioner stated that he began pouring gasoline on the stairs when he got to the fourth floor, and he returned down the stairs, pouring gasoline along the steps and in the hallway. (*Id*.) He stated that he "was upset." (*Id*.) Petitioner stated in his confession that he then tossed the cigarette he had been smoking into the gasoline on the floor, went to his car, and drove away. (*Id*.)

The Court therefore concludes that Petitioner is not entitled to a writ of habeas corpus based on his second ground for relief.

### C. Whether Petitioner's Constitutional Rights Were Violated as a Result of the Jury Instructions

The Court will consolidate Petitioner's third, sixth, and seventh claims involving instructional error.

The Supreme Court has provided the following with respect to habeas review of claims that the trial court's jury instruction(s) resulted in the denial of the petitioner's constitutional rights:

> The burden of demonstrating that an erroneous instruction
> was so prejudicial that it will support a collateral attack on the
> constitutional validity of a state court's judgment is even
> greater than the showing required to establish plain error on
> direct appeal. The question in such a collateral proceeding is
> "whether the ailing instruction by itself so infected the entire
> trial that the resulting conviction violates due process," . . .
> not merely "whether the instruction is undesirable, erroneous,
> or even 'universally condemned,'" . . . An omission, or an
> incomplete instruction, is less likely to be prejudicial than a
> misstatement of the law."

*Henderson v. Kibbee*, 431 U.S. 145, 154-155, 97 S. Ct. 1730, 1736-37 (1977) (quoting

*Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S. Ct. 396, 400 (1973)); *see also United*

*States v. Frady*, 456 U.S. 152, 165-66, 102 S. Ct. 1585, 1593 (1982).

Petitioner first claims that the verdict form that the trial court provided to the jury

denied him the presumption of innocence because it listed last, the option of "not guilty."

Petitioner's right to be presumed innocent, however, was not violated because of the

verdict form's order of deliberations. Instead, the form simply suggested an order for the

jury to consider the possible outcomes of the charges against Petitioner. *See People v.*

*Cavanaugh,* 127 Mich. App. 632, 643, 339 N.W.2d 509 (1983). So long as the jury is

instructed on the presumption of innocence and the prosecutor's burden of proof, a trial

judge's instruction to jurors on the order of deliberations does not violate the presumption

of innocence or coerce a verdict. *See Meade v. Lavigne,* 265 F. Supp.2d 849, 862-63

(E.D. Mich. 2003). At Petitioner's trial, the court instructed the jury specifically and

accurately on the presumption of innocence and the burden of proof.

Petitioner next claims that the trial court erred when it provided the jury with a set

of written instructions setting forth the elements of first- and second-degree murder. The Michigan Court of Appeals rejected this claim, reasoning that Michigan Court Rule 6.414(G) authorizes the jury to take into the jury room a writing, other than the charging document, which sets forth the elements of the charges. *Buford,* Slip. Op. at * 3. Petitioner does not suggest how the state court's adjudication of this claim "was either contrary to, or an unreasonable application of [the Supreme] Court's clearly established precedents, . . ." *Price, supra.* Petitioner does not argue that the verdict form incorrectly stated the elements of the crimes. In any event, a state trial court's decision as to whether to send written instructions into the jury room is not cognizable on habeas review. *See e.g. United States ex. rel. Hancock v. McEvers,* 619 F. Supp. 882, 886 (N.D. Ill. 1985).

Petitioner also claims that the trial court gave defective jury instructions on the concept of reasonable doubt, his alibi defense, and the elements of arson which was the underlying offense supporting the felony murder charges. Respondent contends that these remaining instructional error claims are procedurally defaulted because Petitioner failed to preserve the issues by objecting at trial. The Michigan Court of Appeals found these claims procedurally defaulted and therefore applied plain error review on direct appeal. *See Buford,* Slip. Op. at * 4.

When the state courts clearly and expressly rely on a valid state procedural bar in denying a defendant's claims, "federal habeas review of the claims is also barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will

result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991). If the prisoner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533, 106 S. Ct. 2661, 2666 (1986). "[I]n an extraordinary case," however, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 866 (1995). Moreover, actual innocence which would permit collateral review of a procedurally defaulted claim means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998).

In this case, the Michigan Court of Appeals clearly indicated that Petitioner failed to preserve his remaining instructional error claims for appellate review by failing to object at trial. The fact that the Michigan Court of Appeals then engaged in plain error review of those claims does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). Petitioner's remaining instructional error claims therefore are procedurally defaulted.

Petitioner offers no reasons for the Court to excuse the default. Therefore this Court need not reach the prejudice issue. *Smith, supra*. Petitioner also presents no new

18

reliable evidence to support any assertion of innocence which would allow this Court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default. Because he fails to demonstrate cause for his noncompliance with the state's procedural rules or a fundamental miscarriage of justice resulting from the alleged errors, Petitioner waived his right to federal habeas review of his remaining instructional error claims. These claims, therefore, do not entitle Petitioner to habeas relief.

### D. Whether Petitioner's Constitutional Rights Were Violated by the Suppression of the Statements of Certain Witnesses to the Fire

In his fourth claim, Petitioner contends that he was deprived of his right to present a defense when the trial court refused to allow a police officer to convey the statements of two occupants of the apartment building following the fire that they saw three men running away from the apartment building after the fire started. Petitioner alternatively contends in this claim that his counsel was ineffective for failing to call these two tenants as witnesses at his trial. Petitioner claims that this evidence would have established that other persons were responsible for settting the deadly fire.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or

Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted).  However, "'[t]he accused does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence.'" *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S. Ct. 2013, 2017 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653 (1988)).  The Supreme Court has indicated that the Constitution grants trial court judges "'wide latitude' to exclude evidence that is repetitive, marginally relevant, or that poses a risk of 'harassment, prejudice, or confusion of the issues.'" *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986)).  Moreover, under the standard of review for habeas cases as enunciated in Section 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect.  Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

The Michigan Court of Appeals upheld the trial court's decision to exclude the tenants' statements as inadmissible hearsay which did not fall within any of the established exceptions to the hearsay rule. *Buford,* Slip. Op. at * 5.  In particular, the Michigan Court of Appeals concluded that there was no evidence presented to establish that the statements would qualify either as a present sense impression or as an excited

20

utterance under Michigan Rule of Evidence 803. *Id.*

What is or is not hearsay evidence in a state court trial is governed by state law. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004) (internal citations omitted). "A federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay, because state law governs questions concerning the admissibility of evidence." *Id.* at 706. This Court therefore is bound by the Michigan Court of Appeals' determination that the witnesses' statements were inadmissible hearsay. Any claim that the trial court improperly refused to admit this evidence, therefore, is not cognizable on federal habeas review.

Moreover, evidence of third party culpability generally is not admissible unless it is coupled with substantial evidence tending to directly connect the third person with the actual commission of the offense. *Andrews v. Stegall,* 11 Fed. App'x. 394, 396 (6th Cir. 2001) (citing *Walters v. McCormick*, 122 F. 3d 1172, 1177 (9th Cir. 1997)). Although federal courts have granted habeas relief from state convictions when the trial court improperly excluded evidence tending to show that another person committed the crime, they have done so only where the petitioner presented some evidence connecting that person to the crime for which the defendant is on trial. *See Cikora v. Dugger*, 840 F. 2d 893, 898 (11th Cir. 1988). In the present case, as discussed more extensively below, the excluded statements do not suggest that the men seen running from the apartment building started the fire. There in fact is no evidence tending to show that those individuals committed the crime. Any connection between these men and the fire is

21

further undercut by Petitioner's own confession to the crime. Because Petitioner has failed to establish any nexus between the arson and these men, the exclusion of this evidence did not deprive Petitioner of a fair trial.

Petitioner claims in the alternative that his trial counsel was ineffective for failing to call the two tenants who made these statements to the police as witnesses. To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two prong test. First, he must demonstrate that his counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687,104 S. Ct. 2052, 2064 (1984). To make this showing, Petitioner must overcome a strong presumption that his counsel was effective. *Id*. at 689, 104 S.Ct. at 2065. As the Supreme Court has advised, "a court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance . . the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy." *Id*. Second, Petitioner must show that his counsel's deficient performance prejudiced his defense. *Id*. To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068.

The only information the tenants provided to the police was that they saw three men running from the vicinity of the apartment building at the time of the fire. This testimony did not exculpate Petitioner, nor has Petitioner presented any information to

suggest that these witnesses knew more about these three men or their connection to the fire to raise doubt regarding Petitioner's guilt. A defense attorney has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant. *See Millender v. Adams*, 187 F. Supp. 2d 852, 877 (E.D. Mich. 2002); *see also United States v. Porter*, 924 F.2d 395 (1st Cir. 1991) (holding that the defendant was not deprived of the effective assistance of counsel as a result of counsel's alleged failure to interview witnesses, absent a showing that further investigation would have helped the defendant). Moreover, this Court cannot find prejudice resulting from the failure of Petitioner's trial counsel to produce these witnesses in light of Petitioner's confession.

###　E.　Whether the Trial Court Erred in Calculated Petitioner's Sentence Under the Michigan Sentencing Guidelines

Petitioner lastly contends that the trial court incorrectly scored several of the offense variables of the Michigan Sentencing Guidelines in fashioning his sentence.[3]

A petitioner's claim that the state trial court incorrectly calculated his or her sentence under the state's sentencing guidelines is not cognizable on federal habeas review because it is basically a state law claim. *McPhail v. Renico,* 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006) (citing *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475 (1991)); *see also Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005).

---

[3]It is not clear from Petitioner's brief in support of his habeas petition how he believes the trial court erred in calculating his sentence. The Michigan Court of Appeals described his claim as being that the trial court erred in departing from the sentencing guidelines on the basis of its inaccurate belief that the two assault victims were severely injured.

Petitioner's claim that several of the offense variables of the Michigan Sentencing Guidelines were incorrectly scored therefore fails to state a claim upon which habeas relief can be granted. *Id.*

Petitioner also contends that the trial court judge violated his Sixth Amendment right to a jury trial by considering factors to score his sentencing guidelines range that had neither been submitted to a jury and proven beyond a reasonable doubt nor admitted to by Petitioner. In support of this claim, Petitioner relies on *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531 (2004)*,* in which the Supreme Court held that, other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. There are two reasons why Petitioner's reliance on *Blakely* fails.

First, Petitioner's sentence of forty to sixty years' imprisonment was within the statutory limit for the crime of assault with intent to murder. Second, *Blakely* involved a trial court's departure from a determinate sentencing scheme. Michigan has an indeterminate sentencing scheme in which the trial court sentences the defendant within a minimum and a maximum sentence. *Blakely* therefore has no application to Petitioner's sentence. As the *Blakely* Court indicated, indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe upon the province of the jury. 542 U.S. at 304-05, 308-09, 124 S. Ct. at 2538, 2540-41. Accordingly, the trial court's consideration of facts not determined by the jury in calculating the sentencing guidelines

range in Petitioner's case did not violate his rights under the Sixth Amendment.

**IV.    Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal

habeas relief on the claims presented in his petition.

Accordingly**,  IT IS ORDERED** that the petition for writ of habeas corpus is

**DENIED**.


s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Myreon Buford, #432664
Kincheloe Correctional Facility
16770 S. Watertower Drive
Kincheloe, MI 49788

Brad H. Beaver, Esq.